UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAX VAN HOEGAERDEN HERRMANN TELLES,

       *Plaintiff*,

    v.

ALEJANDRO MAYORKAS *et al.*,

       *Defendants*.

Civil Action No. 21-395 (TJK)

## MEMORANDUM OPINION

Max Telles, an EB-5 immigrant investor visa applicant, sued the Secretary of Homeland Security and related government officials, alleging that they have unlawfully delayed the processing of his visa application. Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants' motion will be granted for the reasons explained below.

## I.    Background

### A.    The EB-5 Immigrant Investor and Regional Center Programs

The EB-5 Immigrant Investor Program allocates visas to immigrants "seeking to enter the United States for the purpose of engaging in a new commercial enterprise." 8 U.S.C. § 1153(b)(5)(A). When Telles applied, an interested immigrant must have invested $1,000,000 in an enterprise, or $500,000 in a "targeted employment area," *i.e.*, an "area designated by the Secretary of Homeland Security . . . as a high unemployment area." *Id.* § 1153(b)(5)(C); (D)(viii).[1]

---

[1] In July 2019, the threshold amounts required for EB-5 investments increased from $1,000,000 to $1,800,000 generally and from $500,000 to $900,000 for targeted employment areas. *See* Final Rule, EB-5 Immigrant Investor Program Modernization, 84 Fed. Reg. 35,750, 35,808 (July 24, 2019).

The investment, in turn, must "create full-time employment" for at least ten United States workers. *Id.* § 1153(b)(5)(A)(ii). But under the Regional Center Program, "certain so-called 'economic units'" can "apply for categorization as a 'targeted employment area' and designation as a 'regional center.'" *Bromfman v. USCIS*, No. 21-cv-571 (BAH), 2021 WL 5014436, at \*2 (D.D.C. Oct. 28, 2021). Once designated, an immigrant can "invest the requisite threshold amount of funds into the center" and meet the EB-5 job-creation requirement indirectly. *Id.*; *see also Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 98 (D.D.C. 2021) (citing Pub. L. 102-395, title VI, § 610(b), 106 Stat. 1828, 1874 (1992)).

To then obtain a visa, the immigrant investor must file a Form I-526 petition with U.S. Citizenship and Immigration Services ("USCIS"), an agency within the Department of Homeland Security. *See* 8 C.F.R. §§ 204.6(a), (c). "Once the Form I-526 is approved by USCIS, the applicant must still wait for a visa to become available, which, the D.C. Circuit has observed, 'may take years.'" *Sychev v. Jaddou*, No. 20-cv-3484 (CKK), 2022 WL 951378, at \*2 (D.D.C. Mar. 30, 2022) (quoting *Mirror Lake Village, LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020)). "USCIS generally processes petitions according to a 'first-in, first-out' method, but prioritizes petitions from countries 'where visas are immediately available, or soon available' based on per-country limits. This process allows visa petitioners from countries where visas are immediately available to more efficiently use their country's annual allotment of visas." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 48 (D.D.C. 2021), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021) (footnote removed); *see also USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, USCIS (Jan. 29, 2020), *available at* https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory; *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, USCIS (Apr. 2, 2021), *available at*

https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-im-migration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach.[2]

The Regional Center Program's authorization expired on July 1, 2021, but it was reauthor-ized on March 15, 2022.  *See* EB-5 Reform and Integrity Act of 2022, Section 103(b)(1), Pub. L. No. 117-103, 136 Stat. 49, 1075 (2022).  USCIS has said that it "will adjudicate all Form I-526 petitions filed before March 15, 2022, according to the applicable eligibility requirements at the time such petitions were filed."  EB-5 Immigrant Investor Program, USCIS (last updated July 6, 2022), *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program.  It has also "confirm[ed] that the I-526 assignment queues [have] restart[ed]" following the enactment of the legislation reauthorizing the Regional Center Program. ECF No. 18 at 2.

**B.**    **Factual Background**

Telles is a citizen of Brazil and Belgium and resident of the United Kingdom.  After grad-uating from an American university, his father gave him $600,000 "for the purpose of making a qualifying EB-5 investment" in a New York real estate project approved as a "regional center" in a targeted employment area.  ECF No. 2 at 5.  He made that investment and, in January 2019, filed a Form I-526 petition.  *Id.*  He received an acknowledgment of receipt from USCIS that same month.  *Id*.  But Telles did not hear from USCIS again for more than a year.  In response to a status inquiry, USCIS told him in May 2020 that his application "was 'in queue to be assigned to an Officer.'"  *Id*.  And in July 2020, the agency told him that "it appears a visa is currently available"

---

[2] "The Court may take judicial notice of information posted on official public websites of govern-ment agencies." *Arab v. Blinken*, --- F. Supp. 3d ---- , 2022 WL 1184551, at *2 n.1 (D.D.C. Apr. 21, 2022) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)).

for his application, but it gave "no information about when USCIS might render its decision." *Id.*
at 6.  USCIS said the same in October 2020.  *Id.*

In February 2021, Telles sued the Secretary of Homeland Security and related government
officials, seeking mandamus relief compelling them to adjudicate his Form I-526 petition.  De-
fendants moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6).  But shortly
after the parties briefed the motion, Defendants informed the Court that the statutory authorization
for the Regional Center Program had lapsed.  ECF No. 14.  So the Court stayed the case pending
reauthorization or further guidance from the parties about how they wished to proceed.  About
nine months later, Defendants notified the Court that Congress reauthorized the Program, and I-
526 assignment queues restarted.  But Defendants could not "determine where Telles'[s] applica-
tion will be in the assignment queue or when his application will be assigned to an adjudicator."
ECF No. 18 at 1.  Thus, without a basis to conclude that the case will be mooted by imminent
agency action, the Court will lift the stay and consider Defendants' motion to dismiss.

## II.    Legal Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it
does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has
any evidence to back up what is in the complaint.'"  *Herron v. Fannie Mae*, 861 F.3d 160, 173
(D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  "In evaluat-
ing a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who
must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga
v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d
605, 608 (D.C. Cir. 1979)).  But a court is "not bound to accept as true a legal conclusion couched
as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555 (2007)).  "While a court generally does not consider matters beyond

the pleadings for a motion to dismiss, it may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020) (cleaned up).  A court may also consider matters of which it can take judicial notice.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.   Analysis

Defendants argue that Telles's petition for a writ of mandamus must be dismissed because it fails to state a claim of unreasonable delay.  The Court agrees.[3]

When an agency in charge of an adjudication "fails to render a decision within a reasonable period of time, . . . the Court has the power to grant a writ of mandamus compelling an adjudication."  *Khan v. United States Dep't of Homeland Sec.*, No. 17-cv-2670 (TNM), 2019 WL 11583469, at *2 (D.D.C. Mar. 4, 2019) (quoting *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006)).  To evaluate claims for such relief, courts consider the six factors outlined in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"); *see Penn v. Blinken*, No. 21-cv-1055 (TJK), 2022 WL 910525, at *7 (D.D.C. Mar. 29,

---

[3] Some courts have declined to evaluate claims of unreasonable delay at the motion to dismiss stage, but "it is not uncommon for courts here to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6) motion."  *Liu v. Blinken*, 544 F. Supp. 3d 1, 10 n.6 (D.D.C. 2021) (collecting cases).  In fact, one court has observed that "the weight of authority appears to cut" in favor of deciding "unreasonable-delay claims at the motion-to-dismiss stage before discovery."  *Palakuru*, 521 F. Supp. 3d at 50.  Given that, at this stage, "the Court is not determining whether there has been an unreasonable delay" but whether Telles's "complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay," the Court will evaluate his claim.  *Id.* at 50 (cleaned up).

2022) ("The standard for reviewing agency delay is the same under both § 706(1) of the APA and the Mandamus Act." (cleaned up)).  Those factors are:

    (1)  the time agencies take to make decisions must be governed by a "rule of reason";

    (2)  where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

    (3)  delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

    (4)  . . . the effect of expediting delayed action on agency activities of a higher or competing priority;

    (5)  . . . the nature and extent of the interests prejudiced by delay; and that

    (6)  the court need not "find any impropriety lurking behind agency lassitude to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (cleaned up).

    The first factor is "most important." *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  "It requires an inquiry into whether there is any rhyme or reason for the Government's delay—in other words, whether the agency's response time is governed by an identifiable rationale." *Palakuru*, 521 F. Supp. 3d at 50–51 (cleaned up).  USCIS's processing of I-526 petitions is so governed.  As explained above, USCIS uses a "visa availability approach" that "prioritizes petitions where visas are immediately available, or soon available." *USCIS Adjusts Process*, *supra*.  Once a visa is available or will be available soon, workflows are managed in "first-in, first-out" order. *Questions and Answers*, *supra*.  This process is reasonable.  A "first-in, first-out method" is generally treated as a "rule of reason." *Palakuru*, 521 F. Supp. 3d at 51 (quoting *Muvvala v. Wolf*, No. 20-cv-02423-CJN, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020)).  And prioritizing certain petitions based on visa availability makes sense; it "allows applicants from

countries where visas are immediately available to better use their annual per-country allocation of visas." ECF No. 8-1 at 11; *see also Palakuru*, 521 F. Supp. 3d at 51 (explaining that this approach for EB-5 visas "allow[s] qualified EB-5 petitioners from traditionally underrepresented countries to have their petitions approved in a more timely fashion").

Although Telles disputes that any rule of reason is being applied to the adjudication of *his* petition, he alleges no facts that would allow the Court to plausibly infer an aberration from the process outlined above. He alleges that the average Form I-526 processing time for fiscal year 2020 was 14.2 months. ECF No. 2 at 6. But as he points out in his opposition, an *average* is not always helpful; it can be skewed by the "many applications . . . processed well-outside of and earlier than the time frame given." ECF No. 12 at 12. Meanwhile, the *median* processing time for fiscal year 2020 was 31.2 months. *Historical National Median Processing Time*, USCIS (last updated June 2022), *available at* https://egov.uscis.gov/processing-times/historic-pt. And when Telles sued Defendants, his petition had been pending for several months *less* than that. As of today, it has been pending about 42 months, an admittedly long time. But that includes the near nine months the Regional Center Program lacked authorization. And as of May 2022, the median processing time for fiscal year 2022 was 41.2 months. *Id.* Currently, 80% of I-526 cases for non-Chinese immigrant investors like Telles are completed within 48.5 months. *See* Check Case Processing Times, USCIS (last visited July 7, 2022), *available at* https://egov.uscis.gov/processing-times/. Besides, Telles's arguments do not "account for the possibility that many others in his situation . . . filed their petitions before he did." *Palakuru*, 521 F. Supp. 3d at 51. In short, based on the facts alleged and information of which the Court may take judicial notice, the first factor weighs in Defendants' favor.

The second factor, which looks for a congressional timetable, tips slightly in Telles's favor. Congress statutorily expressed its "sense" that the "processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). That language, passed by both houses of Congress and approved by the President, is surely "an indication of what the legislature had in mind—after all, Congress had the option of saying nothing on the subject at all." *Uranga v. USCIS*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020). Even so, the "prefatory" wording "is best interpreted as nonbinding" given that "a sense of Congress resolution is not law" under Circuit precedent. *Palakuru*, 521 F. Supp. 3d at 51 (quoting *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008)). Indeed, the same statute "expressly recognizes 'the current backlog' in processing visa applications." *Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that § 1571 does not provide a "Congressional timeline to apply"). Thus, the Court agrees with others in this District that the timeline provided by § 1571 is "aspirational, rather than mandatory," and will weigh it accordingly. *Id.*

"The third and fifth factors are often considered together, and require the Court to consider [Telles's] interests, health, and welfare," and the prejudice to those interests from delay. *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021) (citation omitted). Telles alleges that he is harmed by the delay in adjudicating his petition because he wants to, but cannot, "move forward with his life in the United States." ECF No. 2 at 8. According to his complaint, he cannot start his new job in New York until he receives his EB-5 visa. *Id.* And the waiting is "causing him considerable expense, stress, and uncertainty." *Id.* But these allegations are far from the allegations of "health and welfare" harm found "in other cases in which courts have weighed these factors in a plaintiff's favor." *Desai v. USCIS*, No. 20-cv-1005 (CKK),

2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021) (citing cases in which the plaintiffs alleged that they were separated from their loved ones and family members). Beyond the vague and conclusory reference to "stress," his allegations point to only economic harm. ECF No. 2 at 8; *see also* ECF No. 12 at 15 (highlighting only economic harm). Thus, to the extent that the third and fifth factors favor Telles at all, they "weigh only slightly in support of finding an unreasonable delay." *Palakuru*, 521 F. Supp. 3d at 53; *see also Desai*, 2021 WL 1110737, at *7 (finding that the plaintiff did not allege "that human health and welfare [were] at stake or that there [were] other prejudiced interests beyond [the plaintiff's] interest in having his Form I-526 promptly adjudicated" when he concededly alleged "purely economic" harm).

The fourth factor "requires a court to account for the effects of expedited action on agency activities of equal or greater priority," and it heavily favors Defendants. *Liu*, 544 F. Supp. 3d at 13 (cleaned up). The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). Ordering Defendants to adjudicate Telles's petition now would do just that. Telles responds that his application "is straight-forward and its adjudication will take an extremely short time," ECF No. 12 at 17, which for all the Court knows may be true. But ordering Defendants to reshuffle the queue to put him first "would plainly interfere with the [USCIS's] 'unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" *Desai*, 2021 WL 1110737, at *7 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)).

As for the sixth factor, Telles admits that he did not allege that Defendants "acted in bad faith in delaying action." *Gona v. USCIS*, No. 20-cv-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021); *see* ECF No. 12 at 17 (acknowledging that he "did not make any allegations of nefarious motivation for the delay by Defendants").  But this factor does not weigh against him; it is instead "neutral and does not alter the Court's analysis." *Palakuru*, 521 F. Supp. 3d at 53.

*     *     *

Balancing all six factors together, the Court finds that Telles has failed to state a claim of unreasonable delay and thus failed to state a claim for mandamus relief.  While the Court sympathizes with Telles's frustration at having to put his career on pause, ultimately, he has not alleged "a basis to reorder the State Department's priorities by allowing this application to jump in front of others in line." *Giliana v. Blinken*, --- F. Supp. 3d ---- , 2022 WL 910338, at *6 (D.D.C. Mar. 29, 2022).

## IV.    Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 13, 2022